[810 NYS2d 160]

In the Matter of Leah Turell Kent, Appellant, v Steven John Kent, Respondent.

First Department, February 28, 2006

**APPEARANCES OF COUNSEL**

*Leah Turell Kent*, appellant pro se.

*Steven John Kent*, respondent pro se.

**OPINION OF THE COURT**

MARLOW, J.

This case presents what we believe is a "perfect storm" occasioned by respondent father's repeated disobedience of Appellate Division, Supreme, and Family Court orders, further by a series of errors by certain judges and support magistrates in Supreme and Family court, and, finally, made yet worse by the absence, at times, of legal representation for the parties. Consequently, we are presented with a record which regrettably can only compromise public confidence in the Family Court system. Given the number of years that respondent has evaded his court-ordered financial support obligations to his only child, the inexplicable leniency he has been accorded at times by various courts throughout the years, and the erroneous dismissal of petitioner mother's most recent request for an upward modification of child support, we modify the orders on appeal from the

Family Court and remand for a hearing solely to (1) calculate respondent's new child support obligation in accordance with the Child Support Standards Act based on respondent's admitted $80,000 salary and (2) calculate respondent's current and extant 70% share of college expenses.

The parties are now well into their second decade of litigating the issue of support for their child.[1] This is the fifth appeal before this Court in this seemingly endless morass which in its essence simply involves a straightforward determination of child support for a youngster who is fast approaching age 21. More specifically, the excessive litigation in this matter stems principally from respondent's "history of consistently dilatory payment practices" (10 AD3d 275, 276 [2004]), a history compounded by numerous elementary mistakes on basic, fundamental issues made by the various courts in calculating the parties' respective child support and other obligations over the years; inadequate hearing and appearance records; and the parties' numerous appearances in the various courts without benefit of counsel.[2] A *brief* summary of the procedural history in this matter is impossible, but will be attempted.

The parties were granted a judgment of divorce in 2000. They have one son, born in 1986. As relevant to this appeal, a judgment was entered in February 2000, which ordered respondent to pay child support in the amount of $104.60 per week, to obtain medical insurance and pay a percentage of the uninsured medical expenses, and to maintain a life insurance policy in an amount not less than $100,000 for the child's benefit. On the appeal from that judgment (291 AD2d 258 [2002]), this Court found that neither the judgment nor the findings of fact articulated the justification for the child support award. In addi-

**1.** The various actions and proceedings have been in this Court and the Supreme and Family courts. For purposes of consistency, the parties will be referred to as petitioner and respondent throughout this opinion as this appeal is from two Family Court orders, notwithstanding that different nomenclatures apply in Supreme Court and on appeal.

**2.** As a typical example, in an appeal from an order which determined equitable distribution of the parties' Pennsylvania house (233 AD2d 258 [1996]), this Court observed that the record on appeal was inadequate, and the issue of equitable distribution with offsets should have been resolved, despite the parties' pro se appearances at two of the hearings, without the necessity of three separate references after which the matter was still left unclear. This Court also noted that respondent had failed to abide by a prior court order which directed him to pay the upkeep on the house, but that the issue of his possible contempt was not heard as petitioner walked out of the hearing in the middle of her own testimony "in seeming frustration" (*id.* at 260).

tion, Supreme Court had not calculated the combined parental income, and the record was inadequate for the court to determine appropriate child support. We attributed the lack of financial information to respondent's failure to comply with orders to produce signed tax returns and a net worth statement. Further, one of the hearing examiners had noted that respondent's lifestyle was incompatible with his claimed income, a factor which may provide a judge with a basis to impute income. Thus, we remanded for a redetermination of child support with findings and calculations as required by statute.

After the hearing on remand, at which respondent made a "surprise appearance" at the last moment with counsel, Supreme Court rejected petitioner's claim that respondent was underrepresenting his income or that his lifestyle reflected a higher income. Accordingly, the court did not modify the prior child support award or direct respondent to pay any portion of petitioner's child care expenses. In addition to reconfirming the prior child support award of $104.60 per week, the court also reiterated respondent's obligations regarding medical and dental expenses and life insurance coverage.[3]

On appeal, we again found that Supreme Court had erred in calculating respondent's child support obligation (296 AD2d 319 [2002]). This time, Supreme Court had improperly calculated respondent's pro rata share of child support and failed to allocate child care expenses. We increased respondent's weekly child support obligation to $107.07 based on an annual salary of $32,752.44.[4] In addition, we calculated respondent's pro rata weekly share of child care expenses to be $131.20. Again, we noted that respondent's financial circumstances remained "unclear even after the remand." (Id.)

---

**3.** As just another example of the many careless mistakes that have been made in this case throughout the years, respondent's original obligation was to provide a life insurance policy for the benefit of his son in the amount of *no less* than $100,000. In this order, the court reiterated respondent's obligation as only to procure a policy in the sum of $100,000. We observe, however, that in this situation, the incorrectly altered language presents a distinction without a difference because respondent has consistently refused throughout the years to comply with even the minimum court-ordered directives regarding child support, let alone provide any support above and beyond the court-ordered minimum.

**4.** Instead of determining respondent's pro rata share based on combined income, Supreme Court had determined the award based on 17% of respondent's salary only, after rounding down to $32,000. On appeal, we calculated respondent's child support obligation based on his pro rata share (41%) of the combined parental income ($79,885).

Thereafter, the parties made respective applications for upward and downward modifications in child support. A referee concluded that neither party had made a showing warranting the relief sought and recommended that respondent's weekly child support obligation remain at $238.27; however, this amount included $131.20 for child care expenses for a teenage child. In an order dated November 26, 2003, confirming the referee's determination that modification was not warranted, Supreme Court noted that payment for child care expenses for a teenager was contrary to law. Instead of vacating the award for child care expenses only, Supreme Court erroneously terminated respondent's entire child support obligation. The court also affirmed the referee's determination that respondent owed petitioner $23,757.70 in child support arrears, but inexplicably declined to direct periodic payments. The court further found petitioner's request for a recommendation as to college expenses to be premature since the child was still in high school and, in any event, no findings could be made based on the record. The court directed respondent to provide petitioner, within two weeks, with written proof of a life insurance policy in the sum of $100,000 for the child's benefit and to pay $300 in unreimbursed orthodontic expenses.

On appeal from that order, this Court reinstated respondent's obligation to pay child support as Supreme Court had mistakenly terminated that obligation when it obviously meant to terminate only respondent's obligation to pay child care expenses. We also found that, given respondent's "poor payment history," the court should have considered petitioner's request for a payment schedule for child support arrears and directed biweekly payments in the amount of $300 (10 AD3d 275, 276 [2004]). The child support award was reinstated for as long as the child attends college, but was to terminate no later than May 2008. In addition, respondent was ordered to pay $600 for the child's past oral surgery, to contribute to the cost of future orthodontic treatment as necessary and to provide evidence that the $100,000 life insurance policy he procured for the child's benefit remained fully funded. Finally, we authorized an award of college expenses, allocating to respondent 70% of the college expenses which would be incurred at a New York State university. In the event of respondent's failure to comply with the directives of the order, petitioner was advised that she could apply for a hearing to determine whether respondent had committed willful violations of his obligations.

In July 2004, petitioner filed another petition for an upward modification of respondent's child support obligation and a petition alleging a violation of a prior support order. Petitioner maintained that the court should impute additional income to respondent based on a car leasing agreement in which respondent stated that his annual income was $180,000. At the hearing, respondent testified that the lease was in error and his income should have been reported at $80,000. After the hearing, the support magistrate did not increase the amount of child support, instead modifying the support order to a biweekly payment of $212.14 plus $300 in fixed arrears biweekly (total arrears were set at $22,985 as of November 5, 2004), payable through the child support collection unit. The support magistrate directed respondent to reimburse 70% of college expenses not covered by financial aid and added that "[c]hild may request 70% assistance for loan [sic] payable when they become due, 'out of pocket' contribution denied." Respondent was also directed to pay $828 in orthodontic expenses, $349 in pro rata college costs, and 100% of uninsured medical costs. The support magistrate also denied the petition to find respondent in willful violation of a prior support order subject to compliance.

Petitioner filed objections, and Family Court issued the first of the two orders on appeal. As relevant to this appeal, Family Court found that the support magistrate had erred in denying a finding of willfulness subject to compliance and remanded on the sole issue of whether respondent could rebut the prima facie showing petitioner had made regarding willfulness.[5] The court upheld the support magistrate's determination that petitioner was not entitled to an upward modification, even though respondent admitted to an annual salary of $80,000, two and one-half times his salary at the time child support was fixed at $107.07. Despite this substantial increase in salary, the court found that petitioner had failed to demonstrate any increased need for child support. In particular, petitioner had only demonstrated a 7% rent increase which the court did not consider attributable to increased needs of the child who had started college in August 2004. In addition, the court observed that over the past three years various courts had considered respondent's lifestyle and had been equally unconvinced of petitioner's contention that his claimed income was belied by his lifestyle.

---

5. Although petitioner raised an objection to the support magistrate's altered language regarding respondent's obligation to pay 70% of the child's college expenses, Family Court inexplicably did not address this issue.

Moreover, although one car leasing agreement had been introduced into evidence at the hearing, petitioner failed to produce evidence that respondent had also leased a BMW in 2003. The court observed that we had reinstated respondent's child support obligation in the amount of $107.07 in August 2004 and that petitioner was clearly not entitled to child care expenses.

On remand, another support magistrate, the prior one having recused himself, found that respondent, who was represented by counsel, had willfully failed to comply with this Court's order of August 5, 2004, which directed a biweekly award of arrears and continued weekly child support.[6] The court fixed arrears at $23,100.76, which included reimbursement for the long-outstanding $600 orthodontic bill, and directed yet again that respondent provide proof of a fully funded $100,000 life insurance policy. Upon the willfulness finding, the support magistrate directed that respondent be committed on weekends for a period of only one month. However, the court permitted him to purge himself with a lump sum payment of $5,000.[7] The support magistrate adjourned the issues of whether respondent was in compliance with his obligation to keep a current life insurance policy for the benefit of his son and the extent of his compliance with his obligation to pay college expenses. Petitioner now also appeals from a second order rendered by Family Court Judge Drinane, entered on or about September 14, 2005, inter alia, confirming the support magistrate's determination on willfulness.

Against this tortured backdrop, we find ourselves considering yet a fifth appeal in the continuing saga of these two litigants. We take this opportunity to note that, while parties do have an unquestionable right to proceed pro se—and here were probably driven to do so by their economic circumstances—in matters such as these, where emotions often rise to the surface, it would serve everyone's interest if the system were able to ensure that both sides were represented by counsel who presumably could limit the issues to what is reviewable and relevant, and argue them coherently upon a proper, adequate record and with greater objectivity. Such professional help would also save the

---

**6.** The support magistrate did note that, of late, respondent had been in compliance. However, this is because an income execution order was finally in place, not because respondent had suddenly decided on his own to comply with his child support obligations.

**7.** Petitioner, appearing pro se, stated at oral argument of the instant appeal that respondent did pay the $5,000. Respondent did not appear for oral argument.

already overburdened Family Court precious time, since the arguments of understandably upset self-represented litigants, sometimes clouded by anger and despair, and expressed under the drumbeat of emotion, often confuse extraneous matters with the legal issues relevant to their claims (*see e.g. Matter of Steven B.*, 24 AD3d 384 [2005] [recognizing that Family Court judges face crushing caseloads, often in highly emotional settings]). In addition, there are procedural avenues available which allow an experienced attorney to correct an obvious error without resort to an unnecessary appeal.[8] Had the parties been able to secure consistent representation by competent counsel, the initial child support proceedings may well have been less protracted. Furthermore, there might have been no need for repeated reviews in this Court for a case which seeks a straightforward determination of a father's child support obligation—the type of case for which specific rules were designed and have been in place for two decades, and in a forum which has been routinely addressing difficult support issues exclusively for over two decades (*see* Child Support Standards Act).

Petitioner's brief raises many issues, some irrelevant to this appeal as they relate to prior orders which this Court has already reviewed or which are otherwise outside the scope of this appellate record. As to those issues properly raised on this appeal, we find, after our review of the two appealed orders and the record, that petitioner raises several valid points.

Despite the fact that respondent has not filed a cross appeal, he nevertheless seeks affirmative relief from this Court. In the absence of a cross appeal, respondent is barred from obtaining affirmative relief (*see Hecht v City of New York*, 60 NY2d 57, 61-62 [1983]). In addition, respondent's arguments pertaining to orders and matters which are not the subject of this appeal are not properly before us (*id.*). Specifically, respondent argues that this Court should (1) terminate his weekly child support obligation, (2) modify our prior order of July 2, 2002, which respondent maintains held him responsible for day-care expenses that never existed, and (3) unfreeze his bank accounts. While courts try to afford unrepresented litigants some leeway in prosecuting their actions (*see e.g. Mihalakis v Cabrini Med. Ctr. [CMC]*, 176 AD2d 589 [1991]), their entitlement to relief is not

---

8. Clearly, the court which vacated respondent's child support obligation did so in error, thus there was no need to spend time and money to appeal an order containing an obvious mistake, when a simple motion to reargue would likely have caused the court to correct its own error.

thereby enlarged (*see Goldmark v Keystone & Grading Corp.*, 226 AD2d 143 [1996]). Thus, even while we afford respondent every consideration warranted by his pro se status, we are compelled to conclude that his claims for affirmative relief are nothing short of frivolous, as they are wholly unrelated to the appealed orders. Moreover, this Court has no authority to entertain a request, in the first instance, to modify a child support order. Respondent's request to terminate his child support obligation must be made in the Family Court, in compliance with specific pleading and notice requirements, in order to be appropriately heard and determined. Having spent more than a decade in and out of the Family and Supreme courts in a sustained and unrelenting effort to avoid or minimize his child support obligations, respondent, by now, should know the appropriate way to seek to have his child support obligation terminated. As for respondent's belated request that we modify an order rendered over three years ago, respondent's now time-barred remedy was to move timely to reargue that order (*see* 22 NYCRR 600.14 [a]). Finally, as an appellate court, we do not entertain respondent's request, in the first instance, to unfreeze his bank accounts because our power generally is exercised only to review orders issued by trial-level courts (*see* CPLR 5501; *Hecht, supra*), and no such order respecting respondent's bank accounts is before us.[9]

Turning now to the issues properly before us, petitioner argues that respondent's original child support obligation is based on a salary of almost $33,000, and that we should accept the 2003 recommendation of a special referee for weekly child support in the amount of $238.27, a recommendation rejected by Supreme Court. However, this referee's recommendation for child support included child care expenses, to which petitioner was clearly no longer entitled because of the child's age.

Notwithstanding the inapplicability of the special referee's recommendation regarding a prior petition, the instant claim for an upward modification is nevertheless valid. We agree that respondent's existing child support obligation is based on an outdated finding that his annual salary is $32,752.44. At the most recent hearing of petitioner's request for an upward

---

**9.** In any event, were that issue before us, based on the record and given respondent's track record for willfully failing to comply with court orders directing time and time again that he pay child support and arrears, it is unlikely that we would favorably view his request to unfreeze his bank accounts.

modification of child support, respondent *admitted* that he annually earned $80,000, a sum *two and one-half times greater than* the numerical basis for his present support obligation. Respondent made this admission after being confronted with a car lease application in which he represented that his annual salary was $180,000. The support magistrate credited his testimony that the lease was in error and that his salary was only $80,000. Family Court accepted the magistrate's findings, and, in addition, concluded that there was no basis to impute income to respondent as there was no evidence that respondent had hidden assets or a greater earning potential.[10] Family Court also found that the issue of respondent's lifestyle had been repeatedly litigated and petitioner's argument rejected.

Given respondent's well-documented history of obscuring his finances, his dishonesty, his blatant disregard for court procedures, and flagrant disregard of court orders, we are incredulous that the support magistrate would accept at face value his utterly uncorroborated claim that the income stated on the lease application was simply a mistake, a claim made in a context where there is a clear motive to lie. In short, it would be naive, when confronted with a record and a history like this, to ignore the obvious, namely, that respondent dresses his claims to suit his needs and desires at the moment.

Where a party seeks to modify a prior order of support, he or she must demonstrate "changed circumstances" (Family Ct Act § 461 [b] [ii]). Petitioner argues that respondent's substantial increase in salary presents such a changed circumstance. Indeed, respondent's salary admission is, prima facie, a clear and dramatic basis to conclude that his present support order is a gross deviation from the presumptive obligation mandated by the Child Support Standards Act (*see* Family Ct Act § 413; *see also Matter of Ann B. v William B.*, 1 AD3d 243 [2003] [failure to specify unanticipated circumstances in petition to modify support order based on parties' long-standing agreement did not preclude upward modification, given presumptively deficient prevailing level of child support]).

However, under the particular circumstances of this case, we need not address the issue whether a substantial increase in the

---

10. On appeal, petitioner refers to financial matters outside the record to support her contention that respondent's income and lifestyle have increased. However, new facts may not be interjected at the appellate level (*see DiFigola v Horatio Arms*, 189 AD2d 724, 726 [1993]; *Broida v Bancroft*, 103 AD2d 88, 93 [1984]).

noncustodial parent's income, standing alone, can ever occasion an upward modification of child support.[11] Contrary to Family Court's finding, here there is more than that single factor, which we also find significant, especially in light of the extent of the admitted increase in respondent's salary. Thus, we find it compelling to address petitioner's application for an upward modification.

In considering petitioner's request to increase respondent's support obligation we note, in addition to the admitted two and one-half times salary jump, the increase in the child's age since the order was first entered several years ago together with the obvious increased costs attendant to rearing an older child. Moreover, respondent, who has been repeatedly dishonest and has treated court orders with contempt, has behaved in an extraordinarily egregious and irresponsible manner during these proceedings and with respect to his duty to support the one and only child of this marriage. When a party flouts court orders, as this respondent has, he renders the custodial parent so vulnerable to financial chaos and ruin that such misconduct becomes a factor a court must consider and may not ignore. Accordingly, upon reevaluation of respondent's current and former child support obligations, we grant the petition retroactive to the date of its filing and remand solely for the purpose of recalculating respondent's child support obligation based on respondent's admitted salary of $80,000 and in accordance with the Child Support Standards Act, as the record is barren as to petitioner's current salary. As we stated in an earlier order (10 AD3d 275 [2004]), respondent's obligation to pay child support continues as long as the child attends college, but is to terminate no later than May 2008.

We also take this opportunity to correct yet another error committed in this proceeding. In a prior order, we directed respondent to pay 70% of his son's college expenses to attend a

---

**11.** While we leave that issue for another day, we recognize that there is a split in authority as to whether a substantial increase in the noncustodial parent's income, in and of itself, warrants an upward modification (*see e.g. Matter of Commissioner of Social Servs. of City of N.Y. v Currie*, 182 AD2d 433 [1st Dept 1992] [increase in court-ordered child support based solely on increase in income of noncustodial spouse warranted where such increase lifts child out of living below poverty level]; *Matter of Love v Love*, 303 AD2d 756 [2d Dept 2003] [increase in income only one factor to consider on upward modification application]; *Matter of Sorrentino v Sorrentino*, 203 AD2d 829 [3d Dept 1994] [increase in income alone under certain circumstances sufficient change in circumstances to warrant upward modification]).

New York State university. However, in a decision which is in part incoherent, but, to the extent coherent, is incorrect, the support magistrate directed respondent to reimburse 70% of college expenses not covered by financial aid and added that the child "may request 70% assistance for loan [*sic*] payable when they become due, 'out of pocket' contribution denied." Coherent or not, this is neither what we directed nor intended. Respondent was and is directed to pay 70% of his son's college expenses, *regardless* of whether his son has obtained or will obtain student loans. We deem that college expenses consist of room, board, tuition and required books, less any grants or awards which do not have to be repaid. Financial aid in the form of loans and work study shall have no bearing on respondent's financial obligation in this regard and he thus shall not be entitled to any credits therefor. While petitioner has submitted various forms regarding tuition expenses and financial aid, these documents are dehors the record, and, in any event, are incomplete. We therefore remand solely for a determination as to what respondent's 70% share of the child's college expenses are to date and a direction that they be paid. We note that respondent's obligation is undiminished by college loans, even if they are not yet due.

Respondent has betrayed his legitimate and important obligations too often and for too long. Against his many years of refusing to pay court-ordered child support, petitioner's application for a willfulness finding was inexplicably denied, and, further, after a remand on the issue was ordered by the Family Court, respondent was merely given a proverbial "slap on the wrist," and sentenced to one month in jail to be served only on weekends, a lenient sanction he could and did avoid by paying a mere one fifth of his long-standing, delinquent court-ordered obligation. Not surprisingly, it was only when faced with going to jail that respondent paid petitioner a portion of arrears, and only an amount which would avoid jail time.

Beyond his refusal to comply with court orders to pay child support arrears, we also observe that respondent has still not paid $600 in orthodontic expenses for oral surgery, although he has been repeatedly ordered to do so. In addition, respondent still has not provided proof that he continues to hold a funded life insurance policy in the amount of at least $100,000 for the benefit of his son, although he has also been repeatedly ordered to do so. It is entirely consistent with respondent's cavalier attitude toward his parental support obligations that he deliber-

ately failed to pay a routine bill—even in part—for his only child's orthodontic work. Unfortunately, the court, for reasons at best indiscernible, did not require respondent to satisfy the $600 orthodontic bill and provide the requisite proof regarding the life insurance policy in order to avoid jail. This respondent has demonstrated by his repeated failure to satisfy his court-ordered child support obligations that no remedy but jail would effectuate compliance.[12] Given his shameful history, the court abused its discretion by limiting respondent's commitment to one month in jail to be served only on weekends, and conditioned on his payment of only $5,000 of his $22,500.76 arrears obligation.

Accordingly, and because respondent, by his own actions, has demonstrated that he will only comply when faced with the loss of liberty, we, based on the amply supported willfulness finding, increase the sanction to the maximum, i.e., not to exceed six months (*see* Family Ct Act § 454 [3] [a]). Respondent can purge himself of the contempt and avoid all or part of the six-month jail sentence by full compliance with his remaining arrears obligation ($17,500.76), as well as payment of the outstanding orthodontic bill ($600), and proof that he has obtained and is maintaining a fully funded insurance policy in the required amount for the benefit of his son. Unfortunately, given the unexplained delay in addressing respondent's obligation to contribute to his son's college education, the issue of his failure to do so was not resolved at the willfulness hearing.

We have considered petitioner's remaining contentions and find them beyond review of this Court, unavailing, or without merit.

Finally, we address the magistrate's refusal to allow an acquaintance of petitioner to accompany her into the courtroom to observe the proceedings. We note that, with limited exceptions, courtroom proceedings are presumptively open to the public (*see Richmond Newspapers, Inc. v Virginia*, 448 US 555 [1980]; *People v Kin Kan*, 78 NY2d 54, 57 [1991] ["Closure remains only an exception to the mandatory postulate of open trials"]; Judiciary Law § 4). This fundamental rule of public access to judicial proceedings applies equally to matters heard in Family Court (*see* 22 NYCRR 205.4 [a]). However, this right is not absolute and may be limited upon a finding that compelling

---

12. Indeed, current child support and arrears are being paid regularly now only because an income order has been executed.

interests justify closure or partial closure (*see Matter of Herald Co. v Weisenberg*, 89 AD2d 224 [1982], *affd* 59 NY2d 378 [1983]). The presumption in favor of access "is particularly subject to challenge where the interests of children are implicated" (*Anonymous v Anonymous*, 263 AD2d 341, 3423 [2000]). Any exclusion of courtroom observers must, however, be accomplished in accordance with 22 NYCRR 205.4 (b), the requirements of which should be carefully met in all subsequent proceedings in this case.

Accordingly, the order of the Family Court, Bronx County (Monica Drinane, J.), entered on or about June 3, 2005, which, to the extent appealed from as limited by the briefs, denied petitioner's objections to certain orders of the same court (James R. Weigert, Support Mag.), dated January 4, 2005, which, after a hearing, inter alia, (1) denied petitioner's request for an upward modification of child support, (2) denied petitioner's request for a finding of willfulness against respondent subject to compliance, (3) directed respondent to reimburse petitioner, within two weeks of receipt, 70% of college expenses not paid by financial aid and directed that child may request 70% of assistance for loans payable when they become due and denied out of pocket contributions, (4) directed respondent to pay $828 in orthodontic expenses and $349 in pro rata college costs, (5) set arrears at $22,985, and (6) remanded the matter for a willfulness hearing only, should be modified, on the law, the facts and in the exercise of discretion, respondent directed to pay 70% of his son's required college expenses, the petition for an upward modification of child support granted, and the matter remanded for hearing solely to calculate respondent's child support obligation retroactive to the date of the filing of the upward modification petition on or about July 15, 2004, in accordance with the Child Support Standards Act based on respondent's percentage of combined parental income with his share set at $80,000, and a determination of respondent's 70% share of college expenses and a direction that they be paid, and otherwise affirmed, without costs; and order, same court and Judge, entered on or about September 14, 2005, which confirmed a determination by the same court (Kemp J. Reaves, Support Mag.), dated September 14, 2005, which, after a hearing, found respondent in willful default with respect to payment of child support arrears which were set at $22,500.76, in willful default of payment of $600 in orthodontic expenses, and in willful default of his obligation to produce proof of a $100,000 life insurance policy procured for

the benefit of his son, and recommended a one-month period of commitment to be served on weekends which respondent may purge upon a lump sum payment of $5,000, should be modified, on the law, the facts and in the exercise of discretion, and respondent directed to make full payment of arrears set by the support magistrate in the remaining amount of $17,500.76, make payment of the outstanding orthodontic bill in the amount of $600, and provide proof that he has obtained and is maintaining a fully funded insurance policy in the required amount for the benefit of the child within 15 days of service of a copy of this order with notice of entry or be committed for no longer than six months or until such sooner time as he has fully complied, and otherwise affirmed, without costs.

MAZZARELLI, J.P., ANDRIAS, WILLIAMS and SWEENY, JJ., concur.

Order, Family Court, Bronx County, entered on or about June 3, 2005, modified, on the law, the facts and in the exercise of discretion, respondent directed to pay 70% of his son's required college expenses, the petition for an upward modification of child support granted, and the matter remanded for hearing solely to calculate respondent's child support obligation retroactive to the date of the filing of the costs; and order, same court, entered on or about September 14, 2005, which confirmed a determination by the same court, dated September 14, 2005, modified, on the law, the facts and in the exercise of discretion, and respondent directed to make full payment of arrears set by the support magistrate, make payment of the outstanding orthodontic bill, and provide proof that he has obtained and is maintaining a fully funded insurance policy in the required amount for the benefit of the child or be committed for no longer than six months or until such sooner time as he has fully complied, and otherwise affirmed, without costs.