■ In the Matter of STEVEN B., Respondent. MAKEBA S., Appellant, et al., Respondent. [807 NYS2d 29]—

Order, Family Court, New York County (Sara P. Schechter, J.), entered on or about May 26, 2004, which, after a hearing, granted the petition brought pursuant to Family Court Act article 6 for custody of the subject children, affirmed, without costs.

The hearing record strongly supports Family Court's conclusion that the award of custody to petitioner father, whose children had been in foster care since January 2004, is in their best interests (*see Eschbach v Eschbach*, 56 NY2d 167 [1982]). The evidence demonstrated that petitioner is a caring and attentive father who is in a sustained and reliable state of recovery from his drug involvement, and who has a realistic, feasible plan to care for the children and provide them with a stable home. The mother's proof, by contrast, left serious questions about whether she had satisfactorily resolved her substance abuse problems and failed adequately to address doubts as to her competence as a parental caregiver, doubts persisting since the children were removed from her care and custody on two separate occasions.

The dissent's footnote challenges our conclusion that the mother's recovery by the hearing date was in doubt. We disagree. Instead, we believe that the mother's abstinence for a mere seven months, compared with the undisputed evidence that the father had been drug free for at least nine years, more

than adequately justifies our finding that the father's abstinence was "sustained and reliable," while the mother's most recent rehabilitative progress, under any view of her presented, or her inadequately and vaguely proffered evidence, was still in question. This profound difference in their respective progress would, virtually alone, justify our affirmance today.

The decision to grant an adjournment for any reason is one which rests in the sound discretion of the trial court (*Matter of Anthony M.*, 63 NY2d 270, 283 [1984]; *Matter of Sakow*, 21 AD3d 849 [2005]). On this record, we cannot say that Family Court improvidently exercised or abused its discretion in denying the mother's request for a continuance in light of her substantively vague offer of proof and her inadequate explanation for her failure: (1) to prepare fully for the hearing; or (2) to advise the court sufficiently *in advance* that she would be unable to proceed. Indeed, the record fully supports Family Court's finding that the mother's unpreparedness to proceed, which she claimed was unavoidable, was, rather, of her own making.

Specifically, she failed to demonstrate that the alleged conflicts in her schedule prevented her from conferring with counsel during the month between the filing of the petition and the hearing. Furthermore, her need for an adjournment to call a "few" people was vague, and she failed to explain why she had not arranged for their testimony earlier. In any event, a written report by the mother's proffered psychologist was in fact later received in evidence at the hearing, a report which was clearly favorable to the mother.

While the question whether Family Court should have rejected the foregoing factors, and thus granted the mother's adjournment request, is a fair one for her to have raised on appeal, the court's denial of that application, in our judgment, was neither an improvident exercise nor an abuse of its discretion.

Although our dissenting colleague correctly points out that the children were not in immediate physical peril during the pendency of this proceeding, nevertheless a Family Court judge's primary focus must always be on the children's best interests, and presumably their interests are best served when they are reared by a suitable parent. With that in mind, and given the crushing caseloads Family Court judges face, often in highly emotional settings, they are vested with broad discretion to advance cases fairly and cautiously, but also expeditiously. In our opinion, that is exactly what this judge did, notwithstanding that we recognize others may rationally differ with our conclusion. Such differences of opinion are inherent in, and the inevitable by-product of any process that, most appropriately,

accords judges wide discretion to control the progress of such high numbers of difficult cases in their charge. However, in this case, these differences do not warrant a reversal.

On the totality of the record, we also find that the mother received effective assistance of counsel (*see Matter of Kayla A.,* 248 AD2d 243, 244 [1998]). Notably, the mother does not refer to any specific error by counsel which adversely affected her. In any event, the record reflects that counsel corresponded with the court on her behalf, ably elicited testimony from her, and competently cross-examined petitioner. In addition, the mother's lawyer offered, and Family Court received in evidence, several documents which, among other things, attested to the mother's successful completion of a drug program to address her serious addiction, her cooperation and compliance in completing agency requirements, and her abstinence from drugs for seven months. The production of these documents bespeaks counsel's prehearing investigation and more than adequate preparation in order to present his client's case to the court in its most favorable light. Concur—Saxe, J.P., Marlow and Gonzalez, JJ.

Ellerin and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: I respectfully dissent. The father's petition for permanent custody of the children was filed on April 27, 2004 and a hearing on the petition apparently was scheduled for May 26, 2004. By a letter dated May 24, 2004, however, the mother's attorney advised Family Court that he would not be prepared "to go ahead that day" and would be requesting an adjournment. Counsel also advised Family Court that he had informed the father's counsel that he would be applying for an adjournment.

On May 26, 2004, Family Court heard testimony on the petition from the father and his mother. Consistent with his letter, at the close of the father's case the mother's attorney requested a continuance to "prepare [his] client's case." In response to Family Court's questions, counsel stated that his inability to prepare stemmed from not having "had a chance to meet with [his] client." As counsel went on to explain, he had made "at least one appointment" with her; counsel indicated as well that he thought that another appointment had been made after his client missed the first one. When Family Court asked counsel, in effect, if the fault was not his client's, the mother interjected as follows: "Your Honor, but I am in a specialized parenting [course]. Sometimes they change the dates." Family Court then denied the request for a continuance, after expressing awareness that the dates of the parenting course sometimes are changed: "Well, I know that. But not so many times you couldn't

meet with your attorney." For several reasons, Family Court abused its discretion in not granting the request for a continuance.

First, there was no urgency at all that required an immediate resolution of the father's petition for custody. To the contrary, the children were residing with the paternal grandmother under the legal custody of Administration for Children's Services of the City of New York (ACS) and neither the father nor the Law Guardian—neither of whom voiced any objection to the request for a continuance—suggested that the children were in any peril or even that there was anything like a pressing need for an immediate decision on the petition. Second, there was not only no apparent history of delays by the mother on the father's custody petition, there was no history. As noted, the hearing was held just a month after the filing of the petition.

Third, the mother advised Family Court that she wanted to call as witnesses persons who knew her and also that her psychiatrist wanted to testify on her behalf. To be sure, the mother did not provide any particulars about the testimony these witnesses might give. But Family Court did not ask either counsel or the mother for any details. In any event, the "vague" nature of the mother's request to call witnesses hardly provides a reason for denying the request for an adjournment. After all, the mother explained that her attorney had informed her that there would be an adjournment. Obviously, the court and not counsel decide such issues. However, it is significant that counsel did not dispute the mother's representation that counsel had told her there would be an adjournment. If counsel did so inform her, the fault appears to lie not with the mother but with counsel. Inexplicably, the majority nonetheless blames the mother for her "failure . . . to prepare fully for the hearing" and her "fail[ure] to explain why she had not earlier arranged for their testimony." Relatedly, one would think it a point in the mother's favor that counsel gave advance notice to the court that a continuance would be sought. The majority, however, counts against the mother *her* alleged failure (not her counsel's) to give notice earlier when even Family Court did not hold that against the mother. Moreover, even Family Court appears to have recognized that there was at least some legitimacy to the mother's explanation for why she had missed an appointment or appointments with her counsel.

Fourth, fundamental constitutional interests were at stake (*see Kia P. v McIntyre,* 235 F3d 749, 759 [2d Cir 2000] ["parents have a constitutionally protected liberty interest in the care, custody and management of their children" (internal quotation

marks omitted)]; *see also Santosky v Kramer,* 455 US 745 [1982]). Family Court's calendar and time are important, and I recognize that Family Court judges face many difficulties. I recognize as well that Family Court judges have broad discretion over adjournment requests. Broad discretion, however, is not limitless discretion. Under all the circumstances of this case, Family Court abused its discretion by not giving the mother an opportunity to protect her fundamental constitutional interests by calling witnesses to testify on her behalf.*

---

* Although the majority states the father was in a "sustained and reliable state of recovery from his drug involvement," it fails to note that at the time of the hearing the mother also was doing well in her effort to recover from drug addiction. Specifically, she testified she had completed a drug program and had been "clean in recovery for 7 months." Indeed, Family Court commented on a "good report" on the mother and commented that "[h]er drug tests have been negative." Moreover, the father's counsel "commend[ed] her for being drug free for a period of 7 months." The majority's claim that the "mother's proof left serious questions about whether she had satisfactorily resolved her substance abuse problems" is misleading. In point of fact, nothing in the record supports the majority's questioning of her recovery efforts. To be sure, a period of "abstinence for a mere seven months" is not definitive proof of recovery. But it scarcely warrants the majority's skepticism. Moreover, the majority's statement that the "profound difference in their respective progress would, virtually alone, justify our affirmance," is unfortunate and indefensible. Although Family Court rushed to judgment it does not appear that it rushed to judgment on this ground or even on any one factor. The majority's critical reliance on the father's superior progress is inconsistent with the highly fact-sensitive nature of child custody determinations (*see Eschbach v Eschbach,* 56 NY2d 167, 171 [1982] ["there are no absolutes in making (child-custody) determinations"]).