[841 NYS2d 61]

ESTATE OF YARON UNGAR, Deceased, by and through its Administrator, DAVID STRACHMAN, et al., Appellants, v THE PALESTINIAN AUTHORITY et al., Respondents.

First Department, August 16, 2007

## APPEARANCES OF COUNSEL

*Jaroslawicz & Jaros*, New York City (*Robert J. Tolchin* of counsel), for appellants.

*Morrison & Foerster LLP*, New York City (*Charles L. Kerr, Mark David McPherson* and *Kyle W.K. Mooney* of counsel), for respondents.

## OPINION OF THE COURT

MARLOW, J.

Plaintiffs seek to enforce a multi-million dollar judgment entered by the United States District Court for the District of Rhode Island against defendant judgment debtors the Palestinian Authority and the Palestine Liberation Organization. Plaintiffs are the legal representatives and heirs of an American citizen and his Israeli wife who were murdered in Israel by the terrorist group Hamas-Islamic Resistance Movement. Plaintiffs commenced the underlying lawsuit pursuant to the Antiterrorism Act of 1990 (18 USC § 2331 *et seq.*) alleging that the Palestinian Authority and the Palestine Liberation Organization provided Hamas with a base of operations and support to conduct terrorist activities, including the murder of plaintiffs' decedents.

After the Palestinian Authority repeatedly and deliberately failed to answer plaintiffs' discovery requests, and the Palestine Liberation Organization failed to answer the complaint, the Rhode Island District Court imposed the extreme sanction of granting plaintiffs a default judgment; damages were assessed in the amount of $116,409,123 plus attorneys' fees (*see Estates of Ungar v Palestinian Auth.*, 325 F Supp 2d 15 [D RI 2004], *affd sub nom. Ungar v Palestine Liberation Org.*, 402 F3d 274 [1st Cir 2005], *cert denied* 546 US 1034 [2005]).

Because defendants utterly failed to satisfy the judgment, plaintiffs commenced this enforcement proceeding. They successfully restrained certain assets of defendant the Insurance and Pension Fund, and seek a judgment herein declaring that the restrained assets are the Palestinian Authority's property. Defendants maintain that the Insurance and Pension Fund is a separate and independent entity from the judgment debtors and that the restraining notice should therefore be vacated.

In the course of discovery within this enforcement proceeding, plaintiffs noticed James Tanenbaum, a former partner at Stroock & Stroock & Lavan. While at that firm, Tanenbaum was a registered foreign agent of the Palestinian Authority and represented both the authority and the Insurance and Pension Fund. On December 21, 2006, the parties appeared in court for a conference. The court directed the Insurance and Pension Fund to produce Tanenbaum for a deposition "to take place by" January 10, 2007, and, further, to produce two overseas witnesses for deposition thereafter. The court ordered the parties to complete all this discovery by February 15, 2007 and to file the note of issue the next day.

Defendants notified plaintiffs that they could produce Tanenbaum on January 9—one day before the ordered deadline for this witness—with the understanding that he had a lunch meeting and would be unavailable between noon and 2:15. Plaintiffs responded that they did not want to start the deposition and be interrupted for that lengthy period of time and requested that Tanenbaum be produced the next day. Defendants complied with this request. The deposition ran from 10:30 A.M. to 7:00 P.M., with a half-hour lunch break. The court reporter had to leave at 7:00, but plaintiffs had not finished deposing the witness. Plaintiffs maintain that they only had enough time to question the witness about his involvement with the Authority's assets between 1996 and 2001, leaving unaddressed his involvement from 2001 until the present. At about 6:20, plaintiffs' counsel advised that he would not be finished for several more hours. Defendants' counsel stated that Tanenbaum would continue for as long as the court reporter was available, but refused to produce him another day. Plaintiffs' counsel observed that:

> "Mr. Tanenbaum has been evidently prepared, I assume prepared, to talk quite slowly, there's long breaks between questions and the answers, inordinately long periods of time are spent perusing documents, including one time when I told him I'm only going to be asking about the first page of a document and I watched him read through each page of the document, which is admirable deposition preparation, but it makes things take a long time."

Defendants' counsel responded that "Mr. Tanenbaum's been here, he's answered your questions fairly and completely the best he can." Therefore, plaintiffs' assertion that Tanenbaum's

answers were inordinately and deliberately long and delayed stands as an uncontradicted claim which we deem as a fact on this record. Since plaintiffs had not finished deposing Tanenbaum when the deposition ended for the night, plaintiffs' attorney asked the court for an opportunity to complete the deposition on another date, but the court refused. This appeal followed.

We reverse.

The key facts that move us to reverse are that (1) plaintiffs did not disobey any order of the court, and (2) their attorney began the Tanenbaum deposition on time, i.e., on the morning of January 10. The appeal was taken only because the deposition was not completed by day's end, and the court declined plaintiffs' request to complete it on another date, notwithstanding its prior order requiring that all the remaining discovery be "completed" by February 15.

This Court is vested with the power to substitute its own discretion for that of the motion court, even in the absence of abuse (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000], citing, inter alia, *Brady v Ottaway Newspapers*, 63 NY2d 1031, 1032 [1984])—a power we rarely and reluctantly invoke.

While we agree with the dissent that Supreme Court actively and carefully managed discovery, the court gave plaintiffs fewer than three weeks—one falling during a holiday week—to depose Tanenbaum. Defendants did not offer Tanenbaum until January 9, one day before the court order expired, and only on condition that the deposition be interrupted for over two hours while he attended a lunch meeting. Plaintiffs, not unreasonably under that restriction, declined to start the deposition on the 9th, and instead the parties agreed to begin the following morning, clearly within the court's deadline. Defendants, who never objected to producing their witness for more than one day, insist that his deposition could not go beyond January 10, the date by which the court had ordered his deposition be "taken."

Plaintiffs' simple request to continue this timely deposition to completion—which was unnecessarily prolonged by—as characterized by plaintiffs' counsel—the witness's "excruciatingly slow manner" in answering questions—should have been granted for the following reasons: (1) the court on the preceding December 21 gave plaintiffs a relatively short deposition schedule, which included a holiday week, for this witness; (2) plaintiffs commenced in a timely manner after defendants offered the last two days of the ordered time frame; (3) the other

outstanding discovery was yet to continue for more than another five weeks; (4) this witness's testimony was critically important to plaintiffs' claims, given his particular, long-term knowledge concerning the restrained assets at issue; and (5) defendants did not claim any potential prejudice were the request to be granted. In addition, while the court did indicate that time was a critical factor, it is clear that the order was not so specific that it anticipated the kind of unusual situation that this appeal presents, where: (1) the witness was deposed for an entire day within the deadline; (2) it is unrefuted that he answered plaintiffs' questions in an inordinately slow fashion; and (3) it is obvious that another day, or less (within 36 days before the February 15 overall deadline), was all that was needed to complete his testimony. As a result, several months have now elapsed since the February 15 deadline, and the parties are still on hold. All this could have been avoided by simply setting a date any time before the overall February 15 deadline to complete Tanenbaum's deposition. Consequently, defendants' complaint that the money at issue has been improperly under restraint is unconvincing because they could have ended the deposition on January 11, 2007 or very shortly thereafter.

We also respectfully disagree with our dissenting colleague's willingness to hold plaintiffs' lawyer accountable for the court stenographer's inability to continue working after 7:00 P.M., or to declare now that, in hiring that court reporter, plaintiffs' attorney is somehow "irresponsible" for not, in advance, making it a condition of the job that the stenographer remain well into the night. We find that view unprecedented, and an unreasonable and unrealistic expectation and expansion of a lawyer's responsibility. Beyond that, to deprive plaintiffs of the right to finish the deposition, even partially on the basis of the dissent's imposition of this new-found obligation on the legal profession, is entirely out of proportion when we balance its result against what the parties have at stake in this lawsuit.

It most respectfully seems to us that, under our dissenting colleague's view, if a party has been ordered to "take[ ]" a deposition by January 10, and even if that party in fact makes a diligent, concerted, or reasonable effort to complete the deposition on that date, that all further inquiry and consideration of the matter is foreclosed, even though that party has failed to cover a significant portion of the relevant issues due to the witness's "excruciatingly slow" responses to counsel's questions, and even though the court has ordered overall discovery

to be completed more than a month after the deposition was about 50% completed. Although the dissent faults plaintiffs' performance with regard to the deposition, we respectfully and strongly disagree on this record that plaintiffs' attorney was either "irresponsible" or "entirely and inexcusably to blame for the deposition not concluding before the expiration of the deadline." Simply put, employing such hyperbole—to portray the relevant events surrounding what we see at its core as a simple adjournment request—is unwarranted and unreflective of this record.

The dissent further contends that our disagreement with its posture somehow undermines trial courts' authority. To conclude that Supreme Court should have allowed the deposition to continue in this relatively unusual situation, in our view, hardly undermines judicial authority. Rather, we are simply exercising what we regard as a reasonable and more provident use of discretion in this particular case where there is not a scintilla of evidence that plaintiffs in any way acted in bad faith or deliberately disobeyed the order requiring this deposition be "taken" by January 10. We reiterate that, if defendants were so concerned with delay, they could have easily returned to complete the deposition 14 hours later, and certainly before the scheduled February 15 discovery deadline.

The dissent also heavily relies on two cases: *Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. (Habiterra Assoc.)* (5 NY3d 514 [2005]) and *Kihl v Pfeffer* (94 NY2d 118 [1999]). We are in complete agreement with the language the dissent quotes from these cases. However, the repeated delinquent conduct of the sanctioned parties in *Andrea* and *Kihl,* which motivated the Court of Appeals to express these principles as it did, is substantially dissimilar to the facts this appeal presents, where there is a complete absence of disobedience, willfulness and bad faith. Indeed, plaintiffs herein—instead of disobeying court directives—respectfully requested, before the discovery deadlines, two extensions, which the court granted. Therefore, not only is reliance on *Andrea* and *Kihl* inapt, but the dissent's accusation that we are "tolerating plaintiffs' counsel's disregard of Supreme Court's deadline, . . . the principles that inform it and the facts establishing the irresponsible behavior of plaintiffs' counsel" is simply incorrect. In addition, we would respectfully observe that our dissenting colleague's statement—criticizing, as irrelevant, our view that " 'deliberate' disobedience or 'bad faith' was required before

Justice Kornreich properly could deny plaintiffs' motion"—is a puzzling declaration in light of his reliance on *Andrea* and *Kihl,* where willfulness and a lack of good faith appear as major factors underpinning these rulings.

Although not alone dispositive, we also note that defendants' resistance to plaintiffs' reasonable request comes with a measure of ill grace in light of codefendant Authority's documented history of engaging in dilatory tactics to plaintiffs' detriment in the underlying and other litigation (*see Estates of Ungar, supra*; *see also Knox v Palestine Liberation Org.,* 229 FRD 65, 70 [SD NY 2005]).

Accordingly, the order of the Supreme Court, New York County (Shirley Werner Kornreich, J.), entered February 6, 2007, which denied plaintiffs' motion for an extension of time to complete the deposition of defendants' witness, should be reversed, on the facts and in the exercise of discretion, with costs, and the motion granted. The parties are directed to complete the deposition within 30 days of service of a copy of this order with notice of entry.

McGUIRE, J. (dissenting). In my view, Supreme Court providently exercised its discretion in denying plaintiffs' motion to compel the continued deposition of Tanenbaum. Accordingly, I disagree with the majority's decision to substitute its discretion for that of Supreme Court.

On April 21, 2005, plaintiffs domesticated two federal court judgments in their favor against defendant Palestinian Authority (the Authority). Plaintiffs subsequently commenced this postjudgment enforcement action seeking a declaration that approximately $100 million in assets being held by a financial services entity in the account of defendant-appellant Palestinian Pension Fund of the State Administrative Employees (the Fund) are the property of the Authority and may be used to satisfy the domesticated judgments. These assets have been frozen since shortly after the judgments were domesticated.

Justice Kornreich, who has presided over this proceeding from its outset, recognized that a substantial amount of assets were being restrained and required the parties to conduct discovery expeditiously. On May 18, 2006, Justice Kornreich placed the parties on notice that discovery would be completed with dispatch, stating that "I want the discovery . . . to begin as quickly as possible. I want this to go quickly. . . . I think it's important that this be dealt with as quickly as possible." Dur-

ing a discovery conference on July 6, 2006, Justice Kornreich directed that document discovery be completed by August 31, 2006 and that all discovery be completed by October 13, 2006. On plaintiffs' first motion to extend the deadline, Justice Kornreich, finding that "the majority of the documents" had been produced by August 31, extended the time to complete depositions to December 15, 2006. Shortly before the December 15 deadline, plaintiffs again moved to extend the time to complete discovery because the depositions of three witnesses, including Tanenbaum, had not yet been taken. At the December 21 hearing on the motion, Justice Kornreich made her concerns regarding the further prolonging of discovery clear. Nevertheless, she extended the deadline to complete discovery to February 15, 2007, noting that date would mark "the end of discovery," and directed that Tanenbaum's deposition occur on or before January 10. Notably, Justice Kornreich expressly rejected plaintiffs' request that the deadline for Tanenbaum's deposition be set at the end of January.

Despite Justice Kornreich's admonitions regarding the need to complete discovery and directive that Tanenbaum's deposition be completed by January 10, plaintiffs did not depose Tanenbaum until January 10. Plaintiffs, fully aware of the January 10 deadline, rejected the Fund's suggestion that the deposition commence the day before. When the deposition was not completed on January 10, allegedly owing to the manner in which Tanenbaum answered the questions, and the Fund refused to produce Tanenbaum for a continued examination, plaintiffs moved for such relief. Justice Kornreich denied the motion, declining to "further delay the discovery and trial of this matter."

"Although this Court may exercise its own discretion regarding discovery determinations, deference is afforded to the trial court's discretionary determinations regarding disclosure" (*Buchwald & Assoc. v Marber-Rich*, 305 AD2d 338, 338 [2003] [internal quotation marks and citation omitted]; *see generally Matter of Steven B.*, 24 AD3d 384, 385 [2005] ["given the crushing caseloads . . . judges face . . . they are vested with broad discretion to advance cases fairly and cautiously, but also expeditiously"], *affd* 6 NY3d 888 [2006]). As outlined above, Justice Kornreich actively managed discovery, setting reasonable deadlines for the completion of discovery (*cf. Daniels v City of New York*, 291 AD2d 260 [2002]; *Sterlacci v Water St. Fee*, 283 AD2d 342 [2001]) and adjusting those deadlines on multiple oc-

casions based on the circumstances as they unfolded (*see Buchwald & Assoc., supra; see also Mattocks v White Motor Corp.,* 258 AD2d 628 [1999], *lv dismissed* 93 NY2d 1041 [1999]). Plaintiffs noticed Tanenbaum for a deposition approximately six months prior to the December 21 hearing on plaintiffs' motion to extend the time to complete discovery, yet inexplicably waited until the last day of the final deadline for taking his deposition to depose him. Following the December 21 hearing at which Justice Kornreich unequivocally set a deadline of January 10 for the completion of Tanenbaum's deposition, plaintiffs did nothing to schedule that deposition for more than a week. Indeed, plaintiffs took no action until the Fund—ironically, one of the parties the majority criticizes for "engaging in dilatory tactics . . . in the underlying and other litigation"—took the initiative.[1] Thus, the Fund contacted plaintiffs on December 29 and suggested that the deposition occur on January 9.[2] In response, plaintiffs did not object that the proposed date was the day before the deadline. Nor did plaintiffs propose an earlier date. Rather, plaintiffs suggested that the deposition take place on the day of the deadline.

The submissions on the motion to compel the continued deposition of Tanenbaum included the e-mail exchanges between counsel relating to the scheduling of the deposition. Those e-mails establish that on December 29 the Fund's counsel contacted plaintiffs' counsel and, after reminding plaintiffs' counsel at the outset of the court's order that Tanenbaum's deposition take place by January 10, 2007, offered to make Tanenbaum available on January 9, 2007. Although Tanenbaum had "an important lunch meeting," the Fund's counsel stated that the Fund "was prepared to start early in the morning . . . to accommodate [Tanenbaum's] need to adjourn the deposition from noon to 2:15." In rejecting this proposal, plaintiffs' counsel squandered the possibility of having a second day within the deadline to complete the deposition. Thus, plaintiffs' counsel did not suggest the day before, Monday, January 8, or the week

---

1. The Fund was not a party in either of the two actions the majority cites to support this assertion.

2. The majority adds to the irony with its criticism that "[d]efendants did not offer Tanenbaum until January 9, one day before the court order expired . . . ." Plaintiffs' counsel does nothing for more than a week to schedule a deposition that ostensibly is so critical, the Fund's counsel nonetheless undertakes to contact plaintiffs' counsel, plaintiffs' counsel does not request an earlier date or protest that the day before the deadline is too late, and yet the majority criticizes the Fund's counsel.

before, and did not offer the slightest explanation why he was not seeking to schedule the deposition for a date other than January 10. Far from stating a specific or substantial reason for rejecting the proposal that the deposition commence early on the morning of January 9, plaintiffs' counsel offered only the following sententious comment: "I don't think it's a good idea to do [Tanenbaum's] deposition on a day when he has another commitment right in the middle of the deposition. These things shouldn't be rushed or interrupted." In his response to the proposal from plaintiffs' counsel that the deposition be scheduled for January 10, the Fund's counsel stated he would check with Tanenbaum but cautioned his adversary that "[u]nder Justice Kornreich's order . . . you will need to complete the deposition on that day."

On January 10, the deposition did not begin until 10:30 A.M. Without contradiction, the Fund's counsel twice stated toward the end of the deposition that plaintiffs' counsel "chose to start at 10:30." According to plaintiffs' counsel, the parties took only a one-half hour break for lunch. That the Fund's counsel was willing to take such a short lunch break and work until 7:00 P.M.—even putting aside that it was the Fund's counsel who proposed that the deposition be scheduled for the day before the deadline—is odd behavior for persons allegedly trying to run out the clock. In his affidavit in opposition to the motion, moreover, Tanenbaum stated that he "indicated to [p]laintiffs' counsel that [he] was prepared to stay well into the evening to answer any further questions that he had." The deposition broke off only because of a scheduling conflict of the stenographer, for whom plaintiffs' counsel had arranged. Of course, it was the obligation of plaintiffs' counsel to provide for the possibility that the deposition might not be completed in a day. Given the court's repeated and unequivocal directives (which are set forth below) that the deposition be completed by January 10, plaintiffs' counsel was at best irresponsible in failing to do so.

With this factual backdrop, the majority's arguments are readily refuted. The majority seizes on Tanenbaum's unavailability "for over two hours" on January 9 and claims that "[p]laintiffs, not unreasonably under that restriction, declined to start the deposition on the 9th." This claim cannot be taken seriously. Justice Kornreich repeatedly and unambiguously made clear that the deposition had to be taken by January 10 and plaintiffs' counsel rejected a proposal that the deposition be

scheduled for as early in the morning on January 9 as plaintiffs' counsel wanted it to begin. Under these circumstances, how can it possibly have been "reasonable" to reject the Fund's proposal on the ground that a two-hour rather than a one-hour lunch break would be required on January 9? The only reasonable conclusion is that plaintiffs' counsel squandered the opportunity to have two days within the deadline to complete the deposition.

Even assuming for the moment that it is reasonable of the majority to criticize the trial judge for setting a "relatively short deposition schedule" for the witness, it is not reasonable of the majority to overlook plaintiffs' lack of diligence after the court unequivocally set that schedule, and the majority's claim that "plaintiffs commenced in a timely manner" is not defensible. As for the majority's reliance on the "critically important" nature of the witness's testimony, that factor cuts against plaintiffs for it makes all the more unreasonable their failure to propose an earlier date and their decision to reject the Fund's proposal to schedule the deposition for January 9.

In light of another contention by the majority, the relevant colloquy at the December 21 hearing should be quoted at some length. After being informed at the hearing about the four individuals whose depositions had been noticed but not yet taken by plaintiffs, Justice Kornreich stated: "I am going to direct that Mr. Tanenbaum's deposition is to take place by January 10th." After hearing the immediate objection of plaintiffs' counsel and his contention that he first needed certain documents from a nonparty, Justice Kornreich stated, "I am going to direct that you do his deposition." Justice Kornreich authorized counsel to present interrogatories if he had further questions after receiving the documents from the nonparty but went on to stress to plaintiffs' counsel, "[b]ut you are to do Mr. Tanenbaum's deposition." Counsel immediately asked that he be permitted to have until the end of January. During the ensuing colloquy, counsel for the Fund represented to the court that plaintiffs' counsel had noticed Mr. Tanenbaum's deposition "six months ago," that Mr. Tanenbaum "has been available for months and months" and that plaintiffs' counsel has "had all our documents for months." Significantly, plaintiffs' counsel did not contradict these representations. Rather, he stated only that it always had been the plaintiffs' "preference" to take Mr. Tanenbaum's deposition last and again asked for the end of January. Justice Kornreich unambiguously rejected the request as follows: "I'm not going to order it the end of January. It can

be done next week." Plaintiffs' counsel protested that he "probably ha[d] to spend 20 hours preparing . . . to depose Mr. Tanenbaum." Justice Kornreich again rejected the request: "I understand that, but you have until January 10th. I'm ordering that Mr. Tanenbaum's deposition be taken by January 10th."

Despite these plain and unequivocal directives, the majority writes that the order requiring that the deposition be taken by January 10 "was not so specific that it anticipated the kind of unusual situation that this appeal presents." To be as plain and unequivocal as Justice Kornreich, this is a terrible reason for excusing the failure of plaintiffs to heed the court's repeated directives. To be confident their orders will be enforced, must our busy trial courts take care not only that their orders are plain and unambiguous but that their terms anticipate and specifically provide for unusual or all conceivable contingencies?

The majority further undercuts the authority of trial courts to set discovery deadlines and move cases forward with the other consideration upon which it relies, that "the other outstanding discovery was yet to continue for more than another five weeks." Contrary to the implicit suggestion, a little more delay is no small matter. The majority also errs in asserting that the Fund did not claim it would be prejudiced by the continued deposition of Tanenbaum and concomitant delay in completing discovery. As counsel for the Fund stated during the December 21 hearing, "this is not a situation where simply extending [the time to complete discovery] on and on makes no difference to us. [Plaintiffs] have and they've had for a year and a half a hundred million dollars of our money frozen."

The majority's skewed treatment of the record is perhaps most apparent in its analysis of the Fund's counsel's response to the accusation by plaintiffs' counsel that Tanenbaum "ha[d] been evidently prepared . . . to talk quite slowly" and otherwise to engage in stalling tactics. Although one would think that plaintiffs' counsel would have been quick to object whenever such improper conduct occurred, this accusation apparently was leveled only once, nearly at the end of the deposition (at about 6:20 P.M.), after the Fund's counsel asked plaintiffs' counsel when he estimated he would finish. After first being interrupted by plaintiffs' counsel, the Fund's counsel implicitly denied that allegation, for he responded that "Mr. Tanenbaum's been here, he's answered your questions fairly and completely the best he can." But despite the eleventh hour nature of the accusation and for the sole reason that the Fund's counsel did not specifi-

cally contradict that allegation, the majority leaps to the following conclusion: "Therefore, plaintiffs' assertion that Tanenbaum's answers were inordinately and deliberately long and delayed stands as an uncontradicted claim which we deem as a fact on this record." That the majority would deem such an allegation to be an established fact on such an inadequate basis is remarkable. The message to the trial bar that the majority sends is that practitioners should not be concerned about dignifying an accusation with a response, but should scrupulously and specifically deny each and every allegation because a court otherwise will deem an allegation to be fact.

Moreover, Justice Kornreich certainly never found any merit to plaintiffs' charge that Tanenbaum had been prepared by opposing counsel to speak slowly and give inordinately long answers. Of course, unlike the majority, Justice Kornreich had opportunities to become familiar with the attorneys. Rather than leap to pronounce the Fund's counsel guilty as charged, one would think the majority would defer to Justice Kornreich's resolution of the very motion in which plaintiffs' counsel repeated that allegation. In any event, the record on appeal is wholly inadequate to permit this Court to determine whether the charge has any merit. Even putting aside the specific reasons discussed above to conclude that the Fund's counsel was not trying to run out the clock, the majority does not act responsibly in deeming the charge to be fact. But if matters that have not been specifically contradicted bear emphasis, it also should be emphasized that plaintiffs' counsel did not deny the contention by the Fund's counsel that Tanenbaum had been available for a deposition "for months and months," or his contention that he offered to begin the deposition of Tanenbaum on January 9 as early in the morning as plaintiffs' counsel chose in order to make up for the fact that Tanenbaum had to attend a lunch meeting that day from noon to 2:00 P.M. A neutral application of the majority's approach would require that it "deem as a fact on this record" those contentions as well. The majority, however, says not a word by way of explanation of its failure to apply its approach consistently.

The majority stoops to caricature with its fanciful assertion that

> "under our dissenting colleague's view, if a party has been ordered to 'take[ ]' a deposition by January 10, and even if that party in fact makes a diligent, concerted, or reasonable effort to complete the

deposition on that date, that all further inquiry and consideration of the matter is foreclosed, even though that party has failed to cover a significant portion of the relevant issues due to the witness's 'excruciating slow' responses to counsel's questions, and even though the court has ordered overall discovery to be completed more than a month after the deposition was about 50% completed."

My view, of course, is rather different. It is that plaintiffs' counsel made a desultory, tardy and at best irresponsible effort to complete the deposition, that he was entirely and inexcusably to blame for the deposition not concluding before the expiration of the deadline and that the majority commits an egregious error in adopting as fact the accusation of plaintiffs' counsel.[3]

In one sense, albeit an irrelevant one, the majority is correct in stating that "there is not a scintilla of evidence that plaintiffs in any way acted in bad faith or deliberately disobeyed the order requiring this deposition be 'taken' by January 10."[4] That is, this is true with respect to plaintiffs themselves. We are concerned here, however, with the conduct of plaintiffs' counsel. As the Court of Appeals has stated:

"Supreme Court was of course correct in thinking it

---

**3.** The majority once again distorts my position in attributing to me the view that plaintiffs' counsel was " 'irresponsible' for not, in advance, making it a condition of the job that the stenographer remain well into the night." As I stated, however, plaintiffs' counsel was "at best irresponsible" in failing "to provide for the possibility that the deposition might not be completed in a day." The failure of plaintiffs' counsel to arrange for a stenographer who could work as late as was necessary was hardly trivial given the court's repeated and unequivocal directives that the deposition be completed that day, but was only one part of a course of conduct that on the whole was irresponsible. Although the majority contends that I engage in "hyperbole" in so characterizing counsel's conduct, the only rhetorical liberty taken is on the side of understatement.

**4.** This statement erroneously assumes that a showing of "deliberate" disobedience or "bad faith" was required before Justice Kornreich properly could deny plaintiffs' motion. Some such showing is required to sustain an order striking a party's pleading or precluding a party from offering evidence on a key issue at trial (see e.g. Holliday v Jones, 36 AD3d 557 [2007]; Reidel v Ryder TRS, Inc., 13 AD3d 170 [2004]). The majority, however, cites nothing that supports its implicit assumption that a similar showing is essential to the mere enforcement of a discovery deadline by an order that does no more than deny a party the benefits of discovery the party could have obtained had it heeded the deadline. Instead, the majority professes to be "puzzl[ed]" by my position that to obtain an order enforcing this discovery deadline, the Fund was not required to shoulder the heavy burden placed on a party that seeks such a severe sanction as striking a pleading or precluding evidence on a key issue.

undesirable to punish plaintiffs for the failures of their counsel. But what is undesirable is sometimes also necessary, and it is often necessary, as it is here, to hold parties responsible for their lawyers' failure to meet deadlines. Litigation cannot be conducted efficiently if deadlines are not taken seriously, and we make clear again, as we have several times before, that disregard of deadlines should not and will not be tolerated" (*Andrea v Arnone, Hedin, Casker, Kennedy & Drake, Architects & Landscape Architects, P.C. [Habiterra Assoc.]*, 5 NY3d 514, 521 [2005] [citations omitted]). In tolerating plaintiffs' counsel's disregard of Supreme Court's deadline, the majority disregards this well-settled law (*see also Kihl v Pfeffer*, 94 NY2d 118, 123 [1999] ["If the credibility of court orders and the integrity of our judicial system are to be maintained, a litigant cannot ignore court orders with impunity"]), the principles that inform it and the facts establishing the irresponsible behavior of plaintiffs' counsel.

That the majority does not take seriously the deadlines set by Justice Kornreich is as evident as it is insupportable. Indeed, the majority repeats its "what's-the-big-deal-with-a-little-more-delay" theme when it "reiterate[s] that, if [the Fund was] so concerned with delay, [it] could have easily returned to complete the deposition 14 hours later, and certainly before the scheduled February 15 discovery deadline." By the majority's lights, even the Fund was not entitled to take the deadline seriously. As for the contention that the Fund "easily" could have returned to complete the deposition, it is supported only by the majority's say-so. Contrary to that ipse dixit, in opposing plaintiffs' motion the Fund's counsel affirmed that "the weeks before discovery end on February 15 are quite hectic—for both the parties and Mr. Tanenbaum." Thus, as counsel affirmed, two witnesses were due to arrive from overseas for their depositions (scheduled on February 7 and 13), time would have to be spent preparing for the depositions and Tanenbaum—the chair of his law firm's Capital Markets group—was busy with other matters. The majority is not required to accept these representations, but it has no proper or conceivable basis for disregarding them and concluding that a little more delay would have been of no moment.

In any event, it was not at all unreasonable of Justice Kornreich to set this "relatively short deposition schedule" for the

witness. To the contrary, this Court should be commending Justice Kornreich for actively and carefully supervising the discovery process and endeavoring to bring it to an expeditious close by setting firm but not unreasonable deadlines. This case does not even come close to presenting anything like an appropriate occasion for our "rarely and reluctantly invoke[d]" power, as the majority accurately describes it, to substitute our discretion for that of the trial court, and the majority sets a precedent that will undermine the authority of other trial judges to manage the "crushing caseloads" they face (*Matter of Steven B.*, 24 AD3d at 385). That said, I hope the majority is correct that no such precedent will be set. To the extent that, contrary to the rule of law, the majority's decision is recognized as valid for this case only and its reasoning is not taken seriously, no such precedent will be set.

MAZZARELLI, J.P., FRIEDMAN and MALONE, JJ., concur with MARLOW, J.; McGUIRE, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered February 6, 2007, reversed, on the facts and in the exercise of discretion, with costs, and plaintiffs' motion for an extension of time to complete deposition of defendants' witness granted. The parties are directed to complete the deposition within 30 days of service of a copy of this order with notice of entry.