OPINION OF THE COURT
John M. Hunt, J.
*700 A
This case calls upon the court to examine provisions of the Family Court Act which were enacted in 1971 to ensure that prospective litigants seeking to commence family offense proceedings are permitted to file their petitions with the court and have access to a judge.
Between June 21, 2011 and January 26, 2012 Adefunke A. has filed three family offense petitions against her brother, Adeniyi A. For the reasons which follow, the court concludes that the petitioner has engaged in baseless and vexatious litigation against her brother, warranting dismissal of the underlying petition' and an order enjoining Adefunke A. from commencing further family offense proceedings against Adeniyi A. without first obtaining leave of court.
The history of the family offense proceedings involving the parties is summarized as follows. On June 21, 2011, Adefunke A. filed a family offense petition against her brother, Adeniyi A. The petition alleged, in pertinent part, that the parties reside together in Corona, and that
“[t]he most recent event was on June 1, 2011 at home. Petitioner states the respondent was verbally derogatory to her. Petitioner also states that the respondent wanted her to wear dirty clothing. The respondent also made an inappropriate call to 911. . . Petitioner was taken by ambulance to Elmhurst Hospital and she was hospitalized in the psychiatric ward for three (3) days against her will. Petitioner also states that on April 19, 2011 the respondent slapped her in the chest. Petitioner also states that back in 2009 the respondent illegally cashed a check made out to her. Petitioner also states that the respondent illegally held her passport until he returned it to her in February 2011 . . . . I have filed a criminal complaint concerning this incident.”
On August 12, 2011, both parties appeared before a Court Attorney-Referee, respondent entered a denial to the allegations in the petition, and the case was referred to a Family Court Judge for further proceedings. On September 9, 2011 the parties and petitioner’s assigned counsel appeared before Family Court Judge Dennis Lebwohl for a fact-finding hearing upon the petition. At the conclusion of the hearing the court dismissed *701 the petition as not proven by a preponderance of the evidence (Family Ct Act § 832).[1]
On December 7, 2011 Ms. A. filed a further family offense petition against her brother. In this petition Ms. A. alleged, in pertinent part, that the parties continue to reside together in Corona, and that
“[o]n or about November 27, 2011 at my home in Corona, NY the respondent slapped me on both sides of my face and repeatedly hit me all over my upper body with my slippers. The respondent then stepped on my glasses causing them to break.
“On or about mid-to-late November 2011 the respondent took my passport and repeatedly refused to return my passport to me. My passport was returned to me yesterday. The respondent has withheld my passport from me on more than one occasion.”
The case came before a Court Attorney-Referee on January 31, 2012, counsel was assigned for both parties and the proceeding was thereafter referred to this court for further proceedings. On March 8, 2012 both parties and respondent’s assigned counsel were present and the case was continued until March 14, 2012, and on that date the court granted respondent’s motion to dismiss the petition based upon petitioner’s failure to appear and prosecute the petition. Counsel assigned to Ms. A. had not recently been in communication with her and therefore could provide no reason for petitioner’s failure to appear.
The third and most recent petition was filed by Ms. A. on January 26, 2012. In this petition Ms. A. alleges that she and her brother continue to reside together and that
“[t]he most recent incident was on December 29, 2011. Petitioner states ‘Note presence of assaults on other dates after the original case (see 1st line for dated entry). Respondent is aggressive and inappropriate with bodily insult, deform verbal expressions [szc] and derogatory comments and inappropriate courtesy [szc]. There have been multiple fights with bodily involvement-upper body (see hits and slaps to the upper body); other bodily assaults-see push/pull and wrestling; verbal insults with deroga *702 tory remarks and intention to psychological assault [sic] see inappropriate and unruly comments about guest relations and co-living expenses. Defendant/ Respondent is responsible for damages/Hetch values [sic].’
“Petitioner further states in June 2010, ‘911 call to psychiatric ward at East Elmhurst after a laundry/ load dispute [sic]; has been to same court w/o appropriate resolution; physical aggression and inappropriate response/affect about courtesy, right and age-relations-note date sequences (see 911 reports after 06/01/2011; also note 12/29/2011) [sic] and the history of explanations connected to date sequence. Respondent recently broke a pair of new glasses (see need for reimbursement); also review docket No.0-12688/11 connected to this file for damages that were not properly treated for awards and right of collection see history of documents. I have filed a criminal complaint concerning these incidents: petitioner states that she wrote a letter.’ ”
During the proceedings upon the third family offense petition, Mr. A. presented the Court Attorney-Referee and this court with documentation relating his sister’s mental condition. These documents are physician’s affirmations which are appended to a 2002 application made in the Queens County Supreme Court by Elmhurst Hospital requesting judicial authorization to administer psychiatric drugs to Ms. A.
In one affirmation Deborah Cross, M.D., Director of Inpatient Psychiatry at Elmhurst Hospital Center, states in pertinent part, that Ms. A. “is a twenty-seven (27) year old female who was admitted as an involuntary patient to City Hospital Center at Elmhurst on September 29, 2002,” and the hospital was seeking judicial authorization to administer antipsychotic and anticholinergic medications to Ms. A. whose “illness interferes with her ability to make reasoned decisions with respect to her treatment.”
The affirmation of Yasmin Collazo, M.D., an attending psychiatrist at Elmhurst Hospital, states that she has examined Ms. A.,
“a 27 year old woman and medical student with her 1st psychotic break when she came to New York City after hearing the voice of God. She has been homeless. She was found by the police agitated, unkempt and psychotic. On the [psychiatric] Unit she *703 remains suspicious, paranoid with persistent agitation and violence. The patient needs anti-psychotic medication. In my opinion, medication over objection is in the patient’s best interests.”
Dr. Collazo further stated that “the risks and benefits of medication have been explained to the patient. However, the patient has refused medication on a sufficient number of occasions to materially affect her condition” and that the patient’s “illness interferes with her ability to make reasoned decisions with respect to her treatment” and “[l]eft untreated, the patient’s mental illness will continue to deteriorate.”
Additionally, according to patient discharge instructions prepared by staff of the Psychiatric Emergency Department at Elmhurst Hospital, Ms. A. had also been hospitalized and treated with antipsychotic medication from June 1, 2011 until her discharge on June 3, 2011. The staff at Elmhurst Hospital had arranged for Ms. A. to receive outpatient treatment with Woodside Mental Health Center after her discharge, but it does not appear that Ms. A. followed through with that referral.
On March 14, 2012 the court dismissed this third family offense proceeding at the same time that the second family offense petition was dismissed due to the failure of the petitioner to appear and prosecute the proceeding. Based upon the court’s review of the records of the three family offense petitions filed in this court, and the information concerning petitioner’s psychiatric condition, the court’s order of dismissal provided that the petitioner was prohibited from filing any further family offense petitions against her brother without prior court authorization.
Thereafter, Ms. A. appeared in the Family Court building on May 4, 2012 and she requested to file yet another family offense petition against her brother. In accordance with the court’s order of March 14, 2012, court staff directed that Ms. A. reduce her allegations to writing so that they could be presented to this court for a determination as to whether leave would be granted to authorize the filing of a fourth family offense petition against Mr. A. The Clerk then referred the matter to this court and when Ms. A. did not appear when her name was called, her request to file the petition was denied.
The papers completed by Ms. A. on May 4, 2012 reflect that she was likely still suffering from the psychosis with which she was previously diagnosed, and that she was in need of medical *704 attention. The papers completed by Ms. A. stated, in pertinent part:
“3/16/2012 - 4/26/2012 (Involuntary Hospitalization). With 911 visit for removal from premises; strap jacket [sic] treatments during week ending after 4/05/2012 week and hospital. Respondent court attendances on 4/26/2012. Please have the Respondent explain the history of phone call on 3/6/2012 see 5/02/2012 for additional pictures of camcorder camera for hospitalization threats and return trip using 911. Must be removed from hospital proxy rights. I need legal files for bill .... Respondent also broke a needed spectacle see past docket on Family Court (3/14/2012) for aggression explanations!”
In response to the question on the form inquiring whether the respondent has ever violated an order of protection, Ms. A. wrote, “it has never been fully processed properly. The legal documents in question!” In response to the question of whether respondent has ever threatened her or any family members with a firearm of any kind, Ms. A. wrote, “Camcorder photograph of living relations!” and in response to a question asking whether there were any other cases presently pending between the parties, Ms. A. wrote, “dismissed- see need for legal reviews for # of complaints and continued histories of misbehavior.”
B
The case of Adefunke A. is hardly unique, as she is but one of the many unfortunate souls who appear pro se in the Family Court seeking redress for perceived wrongs. The Family Court has clearly defined subject matter jurisdiction (NY Const, art VI, § 13; Family Ct Act § 115; see Kleila v Kleila, 50 NY2d 277, 282 [1980]; Rainbow v Swisher, 72 NY2d 106, 109 [1988]; Matter of Johna M.S. v Russell E.S., 10 NY3d 364, 366 [2008]), and in some instances, litigants appear in the Family Court seeking to prosecute a noncognizable cause of action or one which is beyond the jurisdiction of the court. These types of cases, although appearing at first to come within the family offense jurisdiction of the Family Court, are actually applications for relief which the court cannot grant such as requests to resolve disputes over tangible property, disputes concerning the property of deceased relatives, requests for a determination of who is the rightful occupant of an apartment or other dwelling, and requests to dissolve a marriage. In many of these instances, litigants have *705 been directed to “go to Family Court” with their problem by public servants who were apparently unaware that the particular problem confronting the complainant is not one which the Family Court is empowered to resolve.
C
Public policy favors free access to the courts so that people may seek redress for wrongs and resolution of disputes (Board of Educ. of Farmingdale Union Free School Dist. v Farmingdale Classroom Teachers Assn., Local 1889, AFT AFL-CIO, 38 NY2d 397, 404 [1975]; Sassower v Signorelli, 99 AD2d 358, 359 [1984]; Matter of Shreve v Shreve, 229 AD2d 1005, 1006 [1996]; Dimery v Ulster Sav. Bank, 82 AD3d 1034, 1035, appeal dismissed 17 NY3d 744 [2011]), and that principle applies to the Family Court which was “[e]nvisioned as a unified statewide tribunal equipped to determine every symptom of familial dysfunction” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 111, at 8 [West 2008]).
It is widely recognized that the Family Courts of this state are busy and overburdened (Chief Judge Jonathan Lippman, 2012 State of the Judiciary Address at 3; Matter of Pizzo v Pizzo, 47 AD2d 948 [1975]; Matter of Scholet v Newell, 229 AD2d 621, 623 [1996]; Matter of Manwani v Manwani, 286 AD2d 767, 768 [2001]). Indeed, the Family Court’s case load has been referred to as “crushing” and consisting of “chaotic and highly charged emotional cases” (Alix A. v Erika H., 45 AD3d 394, 395 [2007]; see also Matter of Steven B., 24 AD3d 384, 385 [2005], affd 6 NY3d 888 [2006]; Matter of Eustace B. [Shondella M.], 76 AL)3d 428 [2010]), and in the absence of additional judges, the court has come to rely upon the valuable service provided by retired judges who serve as judicial hearing officers and “non-judge adjudicating officials” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 121, at 58 [West 2008]).
“Family Court is frequently characterized as a ‘pro se’ tribunal, i.e., a court whose doors are open to any member of the public who believes that [s]he has a justiciable claim against any other individual. Filing fees are non-existent, and in many proceedings counsel may be very useful, but not legally required” (Sobie, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 216-c, at 187 [West 1998]).
*706 The large number of unrepresented litigants adds to the chaotic and anarchic atmosphere in the Family Court, and providing assistance to the many unrepresented litigants adds tremendously to the burden placed upon court personnel. Despite severe financial constraints which affect all of the state’s courts, the Family Court continues to fulfill its obligation to provide access to the court to all litigants.
D
Free access to the court was not always the prevailing practice in the Family Court. In the late 1970s it was alleged that probation officers and court officials had adopted a pattern and practice of attempting to discourage the filing of family offense petitions by unrepresented persons, and of delaying the presentation of family offense petitions to a judge for prompt action, even where the prospective litigant had made allegations of immediate danger. Am action for declaratory and injunctive relief was brought by family offense petitioners against the New York City Police Department, the New York State Family Court, and the New York City Department of Probation.
The case of Bruno v Codd (47 NY2d 582 [1979]) reached the Court of Appeals in 1979, and a plurality of the Court found that the action had essentially been rendered academic because the Police Department entered into a consent judgment delineating the Department’s responsibilities in cases of domestic violence, and Family Court administrators conceded that the court has an ongoing responsibility, “particularly with regard to informing petitioners of the voluntariness of the conciliation option and to making Family Court Judges readily available to mistreated wives” (id. at 590). In addition, the Department of Probation “conceded that its employees assigned to the Family Court have to advise women who appear for intake interviews in family offense cases of their right to reject offers of mediation and to proceed directly by petition” (id. at 591). The plurality opinion also noted the 1977 amendments to the Family Court Act “to prohibit officials from discouraging or preventing any person who wishes to file a petition from having access to the court for that purpose” (id.).[2]
*707 In 1981 (L 1981, eh 416) the Legislature again amended, the Family Court Act, adding Family Court Act §§ 216-b and 216-c, which provide procedures intended to ensure that unrepresented litigants have access to the court. Family Court Act § 216-b directs that the Clerk provide official court forms to any person requesting them, and Family Court Act § 216-c provides specific procedures which court personnel must observe in preparing petitions on behalf of unrepresented litigants. Family Court Act § 216-c, which is relevant to this case, reads as follows:
“(a) Whenever a petitioner is not represented by counsel, any person who assists in the preparation of a petition shall include all allegations presented by the petitioner.
“(b) No clerk of the court or probation officer may prevent any person who wishes to file a petition from having such petition filed with the court immediately.
“(c) If there is a question regarding whether or not the family court has jurisdiction of the matter, the petition shall be prepared and the clerk shall file the petition and refer the petition to the court for determination of all issues including the jurisdictional question.
“(d) This section shall not be applicable to juvenile delinquency proceedings.”
E
In this case court personnel were assigned to assist Ms. A. in filing all three of her family offense petitions and the application for leave to file a fourth petition. With respect to the third family offense petition, court personnel faithfully complied with the mandate of Family Court Act § 216-c, and every allegation made by the petitioner was included in the petition, without regard for whether the allegations were intelligible or whether the allegations set forth a cause of action for a cognizable family offense. The petition was then filed and referred to this court on the same day, as required by Family Court Act § 153-e.[3]
A final disposition of the third family offense petition required four court dates, the assignment of counsel to both parties at *708 public expense, and the appearance of the respondent on three separate days, which no doubt caused him inconvenience. Ultimately this court concluded that the third family offense petition was both unintelligible and that it failed to contain factual allegation which, if true, would establish that the respondent committed one of the family offenses defined by Family Court Act § 812 (1). However, as Ms. A. failed to appear to prosecute the petition, it was dismissed on that basis.
Family Court Act § 216-c was enacted 30 years ago “[b]ecause court clerks and probation officers were seen as unresponsive to the needs and desires of unrepresented petitioners” (Besharov, Practice Commentary, McKinney’s Laws of NY, Book 29A, Family Ct Act § 216-c, at 148 [West 1983]), and the statute “totally divests clerks of the power to regulate the content and filing of petitions” (id.; see also Weiner v State of New York, 273 AD2d 95, 97 [2000]; Matter of Allen v Black, 275 AD2d 207, 209 [2000]).
The concerns which led to the enactment of these statutory provisions and which are discussed in Bruno v Codd no longer exist, and the number and complexity of the cases coming before the Family Court have increased exponentially since 1981. The strict construction afforded to Family Court Act § 216-c has reduced experienced Family Court clerks to “scribes” (Weiner at 97), and as applied, “the provisions of this section make it quite likely that many petitions will be filed that lack legal merit or that contain unnecessary or improper allegations” (Besharov, Practice Commentaries, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 216-c, at 148 [West 1983]). The diversion of court resources required by the mandatory filing and hearing of meritless, frivolous, or vexatious petitions constitutes an unjustified waste of public resources, and it diverts judicial attention from the adjudication of cases having actual merit, to the detriment of the public.
Given the heavy case load of the Family Court, the shortage of available resources, and the inconvenience and cost which result from the filing of meritless petitions, it may be appropriate for the Legislature and court administrators to consider whether Family Court Act § 216-c should be modified to improve the efficiency of the Family Court without denying access to unrepresented litigants.
*709 F
Given the mandate of Family Court Act § 216-c, the court must exercise its own inherent authority to prevent abuse of the judicial process (Shreve, 229 AD2d at 1006; Matter of Manwani, 286 AD2d at 768; Duffy v Holt-Harris, 260 AD2d 595, 596 [1999]; Matter of Pignataro v Davis, 8 AD3d 487, 489 [2004]; Capogrosso v Kansas, 60 AD3d 522, 523 [2009]; Matter of DelVecchio v DelVecchio, 64 AD3d 594, 595 [2009]; Quinones v Neighborhood Youth & Family Servs., Inc., 71 AD3d 1106 [2010]; Matter of Reiss v Giraldo, 77 AD3d 759 [2010]; Dimery, 82 AD3d at 1035; Scholar v Timinisky, 87 AD3d 577, 579 [2011]; Matter of Taub v Taub, 94 AD3d 901, 902 [2012]).
Every petition filed with the court results in the expenditure of public resources and this was no exception. The services of a Court Attorney-Referee, two Judges, court officers, a court reporter, several court clerks, and two assigned counsel paid out of public funds were utilized to prepare, process and dispose of the petitioner’s third family offense petition. The court’s inherent authority to prevent abuse of the judicial process obviously extends to a situation such as this, where an apparently mentally ill unrepresented litigant files repeated petitions which consume court resources and inconveniences respondents who are forced to appear in court in order to respond to baseless claims.
While Ms. A.’s first two petitions were found to state valid claims and both were filed and referred for adjudication, her third petition, filed after the first had been dismissed after trial and while the second was pending before this court, stated no cognizable cause of action under article 8. The rambling and disjointed claims set forth in the third family offense petition, as well as those set forth in her more recent application for leave to file a fourth family offense petition, all of which name or seek to name her brother as respondent, suggest that Ms. A. is in need of the assistance of an entity other than the Family Court. The third family offense petition should not have been filed, although its filing was required by Family Court Act § 216-c, and had this court not entered the order directing that Ms. A. seek leave of court prior to filing further family offense petitions against her brother, a fourth petition containing unintelligible and legally insufficient allegations would have been filed.
Given petitioner’s demonstrated proclivity to engage in vexatious and baseless litigation against her brother, and the strong suggestion that she may be presently afflicted with untreated *710 mental illness, the court’s prior order directing that Ms. A. obtain permission of a Family Court Judge prior to initiating any further family offense petitions against Adeniyi A. is hereby continued.

. Judge Lebwohl’s notes recite that Mr. A. informed the court that the petitioner had recently been confined to a psychiatric hospital for three months.

. The 1977 legislation amended Family Court Act § 812 (3) to provide that “[n]o official or other person designated pursuant to subdivision two of this section shall discourage or prevent any person who wishes to file a petition or sign a complaint from having access to any court for that purpose” (L 1977, ch 449, § 1).

. Family Court Act § 153-c provides that a person filing a petition in the Family Court in which a temporary order of protection is requested “shall be entitled to file a petition without delay on the same day such person first appears at the family court, and a hearing on that request shall be held on the *708 same day or the next day that the family court is open following the filing of such petition.”